UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DEMETRIUS MCBRIDE #192829,

        Plaintiff,

v.

BIENVENIDO B. CANLAS, et al.,

        Defendant.
_____/

Case No. 2:20-cv-212

Hon. Hala Y. Jarbou
U.S. District Judge

## REPORT AND RECOMMENDATION

**I. Introduction**

This Report and Recommendation (R&R) addresses Defendant Chief Medical Officer (CMO) Carmen McIntyre's motion for summary judgment. (ECF No. 30.) CMO McIntyre asserts that Plaintiff Demetrius McBride failed to exhaust his administrative remedies. (*Id*.)

State prisoner McBride filed this civil rights action pursuant to 42 U.S.C. § 1983. McBride alleges that while confined at the Chippewa Correctional Facility (URF) and Alger Correctional Facility (LMF), CMO McIntyre, among others, denied him adequate medical care.[1] (ECF No. 21, PageID.41–53.) McBride's grievance concerning CMO McIntyre's alleged denial of adequate medical care was denied on

---

[1] McBride also sues Dr. Bienvenido B. Canlas, Registered Nurse Christi M. Corpe, and Corizon Health, Inc. for violations of various state and federal laws. (ECF No. 21.) While all of McBride's claims remain at this point in this case, this Report and Recommendation addresses only CMO McIntyre's motion for summary judgment based on McBride's failure to exhaust his claims against her (ECF No. 31).

its merits at Steps I and II, and McBride appealed through Step III. (ECF No. 31-3, PageIDs.112–117.) Nevertheless, CMO McIntyre asserts that, because McBride's grievance was rejected based on a procedural defect at Step III, McBride failed to properly exhaust his administrative remedies and McIntyre is entitled to summary judgment. (ECF No. 30, PageID.84.)

The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court deny Defendant McIntyre's motion for summary judgment.

**II. Factual Background**

McBride's claims against CMO McIntyre arise out of his March 20, 2019 request, and CMO McIntyre's March 22, 2019 denial of medical accommodations recommended by McBride's off-site physical therapist to alleviate some of McBride's chronic back pain. (ECF No. 21, PageID.50–51.) According to McBride, this denial caused him to incur continued and worsening pain. (*Id.*, PageID.52.) McBride asserts that CMO McIntyre (1) acted with deliberate indifference to his medical needs, in violation of the Eighth Amendment, (2) discriminated against him, in violation of the Equal Protection Clause, (3) violated the American with Disabilities Act, (4) violated the Rehabilitation Act, (5) acted with gross negligence, in violation of state law, and (6) inflicted emotional distress, in violation of state law. (*Id.*, PageID.53.)

On March 28, 2019, McBride submitted grievance form LMF-1904-383-12D1, asserting that the CMO McIntyre's rejection of his "necessary treatment plan" on

March 22, 2019 violated his rights under federal law.[2] (ECF No. 31-3, PageID.115). Under the portion of the grievance form asking McBride to explain his problem, McBride stated:

> I am a chronic ailing patient under the American with disabilities Act with an extensive history of spinal pain. In 2005 I had a lower lumbar spinal fusion I have recently been seen by a neurologist who recommended an MRI to appropriately diagnose and treat grievant. It was determined by the neurologist that I was not a candidate for surgical intervention. However, Physical Therapy (P.T.) was recommended. On 3-4-19, Amy Westcomb, P.A. informed me that P.T. was approved. On 3-19-19 P.T. Tim Young from War Memorial Hospital assessed and evaluated grievant. The judgment of this qualified individual was to order as necessary for my rehabilitation the following: 1) Athletic Shoes for Lumbar/Posture support 2) Extra Pillow for back pain relief 3) Hot water bottle for back pain management 4) Lumbar/Sacral Orthotic Brace to improve lumbar posture 5) Air mattress for increased lumbar support. On 3-20-19 Amy Westcomb relayed to me her skepticism of the P.T.'s orders being approved, but that she would put in the request anyway to the Chief Medical Officer (CMO). On 3-22-19 I received I.D. mail from health care, a document (ACMO Review) for Off-Guideline Medical Details and Special Accommodations that deferred and denied the orders of the P.T. and Amy Westcomb. This document was generated on 3-20-19 by Amy Westcomb, P.A., and Rickey J. Coleman, DO informing me that CMO et. seq. Jane Does and John Does have denied a necessary treatment plan ordered by the P.T., a Qualified Medical Professional. Corizon Inc. has established an overprotective criteria, policy or rule, which violates the ADA (42 USC § 12101 et. seq.) Rehabilitation Act (29 USC § 794) and Fourteenth Amendment Equal Protection Clauses. Requested Relief: to grant all of the P.T.'s Orders and recommendations and request under the Off-Guideline Medical Details and Special Accommodations.

(ECF No. 33-1, PageID.115,117.) Under the portion of the grievance form asking what affirmative steps McBride had taken prior to filing the grievance, McBride

---

[2] In his grievance, McBride referred to McIntyre as "CMO Jane Doe." CMO McIntyre does not contend that this designation was in any way inadequate for exhaustion purposes.

responded that he wrote a letter to CMO McIntyre, and spoke to his provider at the prison, Physician Assistant Amy Westcomb. (*Id.*) According to McBride's April 12, 2021, affidavit, McBride's letter to CMO McIntyre, which he sent the same day he received notice that his accommodations had been denied, requested either that CMO McIntyre reconsider the denial or provide some form of substitute accommodations to address his pain. (ECF No. 36, PageID.151–154.)

At Step I, McBride's grievance was denied on the merits, with the reviewing official stating that "[a] disagreement with the judgment of someone qualified and capable of making same does not support a claim for denial of care." (*Id.*, PageID.116.) At Step II, McBride's grievance was once again denied on the merits, with the same justification. (*Id.*, PageID.114.) At Step III, however, reviewing officers rejected the grievance, asserting that McBride had not sought adequate resolution of the issue with CMO McIntyre prior to filing his grievance, as required under MDOC Policy Directive 03.02.130. (*Id.*, PageID.112.)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury[3] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212–16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is

---

[3] Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

5

inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218–19; *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218–19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859–60 (2016).

6

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id*. at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id*. (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id*. at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id*. at ¶¶ Q, W. The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id*. at ¶ W. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated

7

briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ U, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ U, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ R of Policy Directive 03.02.130. *Id.* at ¶ W. In such instances, the grievance must be filed within the time limits prescribed for

filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the

> PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590–91 (6th Cir. 2017).[4]

**V. Analysis**

The exhaustion issue presented in CMO McIntyre's motion for summary judgment is not one of first impression in this Court. In *Raper v. Controneo*, 2018 WL 2928188, at *1 (W.D. Mich., June 12, 2018), the plaintiff state prisoner similarly asserted a deliberate indifference claim against medical professionals employed by the MDOC. In response, the defendants moved for summary judgment, arguing that because the plaintiff's grievance had been rejected at Step III for failure to comply with Policy Directive 03.02.130, he had not exhausted his administrative remedies. *Id.* at *1–2. After an R&R recommending that this Court find that the MDOC had waived the procedural defect raised for the first time at Step III, the defendants

---

[4] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

10

objected, asserting that the Sixth Circuit's opinion in *Cook v. Caruso*, 531 Fed. App'x 554 (6th Cir. 2013), had resolved the issue in their favor. *Raper*, 2018 WL 2928188, at *2–3. In *Cook*, the Sixth Circuit opined that waiver applied only when the plaintiff "receive[d] 'merits-based responses at each step.'" 531 Fed. App'x at 563 (quoting *Reed-Bey*, 603 F.3d at 325). But this Court distinguished the facts of *Raper* from *Cook*. In *Cook*, the Court explained, the MDOC had considered the merits of the grievance in Steps I and II but had rejected the grievance based on procedural defect at each step. *Raper*, 2018 WL 2928188, at *3. In contrast, the Step I and II denials of Raper's grievance were based solely on the merits, and the procedural defect was not raised until Step III. *Id.*

As in *Raper*, the reviewing officers' responses to McBride's grievance at Steps I and II were based solely on the merits of his claims. (ECF No. 31-3, PageID.114,116.) After reviewing McBride's complaints, along with his electronic medical records, the Step I and II officers determined that denying accommodations based on established criteria was not equivalent to the denying medical care. (*Id.*) It was only at Step III that, without reference to the merits, the reviewing officers denied McBride's grievance based on his alleged failure to attempt to resolve the issue with CMO McIntyre prior to filing, contrary to Policy Directive 03.02.130. (*Id.*, PageID.112.) The undersigned agrees that allowing the MDOC to reject a plaintiff's grievance on procedural grounds for the first time at Step III of the process, and then assert that the plaintiff failed to exhaust, would be considerably unfair to a plaintiff who has provided the grieved parties with the notice and opportunity for resolution

11

that underlies the exhaustion requirement. *Powell v. MDOC*, 2019 WL 10744936, at *2 (W.D. Mich., Dec. 19, 2019); *Raper*, 2018 WL 2928188, at *3; *Sedore v. Greiner*, 2020 WL 8837441, at 7 (E.D. Mich. Sept. 21, 2020) ("As a matter of policy, it would be unfair to allow prison officials to address the merits of a prisoner's grievance, but then reject the grievance for a procedural error that existed throughout the process at the final step, where the prison official has the last word.").

Further, the undersigned notes that even if reviewing officers could reject a grievance on procedural grounds for the first time at Step III of the grievance process, there is a genuine issue of material fact regarding the alleged procedural defect. McBride's Step III grievance was denied because the reviewing officer determined that, after review, there was "no indication that the grievant attempted to resolve [his] issue prior to filing [his] grievance" (ECF No. 31-3, PageID.112). However, McBride's affidavit provides that he sent CMO McIntyre a letter in an attempt to resolve his complaint the very same day that his complaint arose (ECF No. 36, PageID.151–154). A reasonable trier of fact could determine that McBride sent CMO McIntyre a letter on March 22, 2018, and that this letter adequately satisfies the requirement that prisoners "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control." MDOC P.D. 03.02.130(Q).

Ultimately, the record demonstrates that McBride did exhaust his administrative remedies with regard to his claims against CMO McIntyre.

12

## VI. Recommendation

The undersigned respectfully recommends that this Court deny CMO McIntyre's motion for summary judgment based on exhaustion.

If the Court accepts this recommendation, all of McBride's claims will remain.

Dated:  October 8, 2021                              /s/ *Maarten Vermaat*
                                                     MAARTEN VERMAAT
                                                     U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).